IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY CARREL, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>GRANT DAVIS, )<br>)<br>  Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 10-cv-4124-KHV |

## MEMORANDUM AND ORDER

Kimberly Carrel brings legal malpractice claims against Grant Davis, alleging that because of his negligence, fraud and breach of fiduciary duty, her legal interests in certain tort claims lost settlement value. The claims which plaintiff settled asserted that Bristol-Myers Squibb Company ("Bristol-Myers") failed to take measures to prevent Robert Courtney, a pharmacist, from diluting chemotherapy drugs. Hundreds of plaintiffs brought similar claims which the parties settled according to a "Global Settlement Agreement."

This matter comes before the Court on Defendant Grant Davis' Renewed Motion For Summary Judgment (Doc. #270) filed April 11, 2016.[1] Defendant asserts that the statute of limitations bars plaintiff's claims.

In Booth v. Davis, No. 10-4010-KHV, the Court recently addressed Davis' motion for summary judgment in a case with similar claims. See Memorandum And Order (Doc. #337) in Case No. 10-4010-KHV, filed April 25, 2016. In Booth, the Court set out a detailed legal framework and

---

[1] On July 15, 2015, defendant filed this motion under seal. See Defendant Grant Davis' Renewed Motion For Summary Judgment (Doc. #227). On March 23, 2016, the Court directed the parties to file public versions of all documents previously filed under seal, with confidential medical and personal identifying information redacted. See Memorandum And Order (Doc. #260).

analysis of the issues which defendant's motion in this case presents. See id. The Court hereby incorporates by reference the law set out in Booth. For reasons set forth below and more fully detailed in Booth, the Court finds that defendant's motion should be sustained.

**I.   Facts**

For purposes of summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiff.

In 1999, doctors diagnosed plaintiff with breast cancer. She underwent treatment including four rounds of chemotherapy. Plaintiff does not have ongoing cancer and considers herself a cancer survivor.

A.   The Suit Against Courtney Pharmacy, Robert Courtney, Eli Lilly And Bristol Myers

On April 29, 2002, on behalf of Kimberly Carrel, Grant Davis filed an action in state court in Jackson County, Missouri against Courtney Pharmacy, Inc. d/b/a/ Research Medical Tower Pharmacy, Robert Courtney and Bristol-Myers. The lawsuit alleged that Carrel suffered injuries on account of diluted chemotherapy medication which she received from Courtney.

Bristol-Myers and Eli Lilly And Company ("Eli Lilly") (another pharmaceutical company involved in similar lawsuits), made a proposed settlement offer to resolve plaintiff's case and over 300 similar cases which other plaintiffs had filed against one or both of the companies.[2]

On November 4, 2002, Carrel signed a Disclosure of Global Settlement with Eli Lilly and Bristol-Myers. See Doc. #271-3. The disclosure stated that Davis' law firm represented most of the plaintiffs in over 300 separate lawsuits regarding Courtney's dilution of chemotherapy

---

[2] Davis and his associates did not notify plaintiff of the mediation which resulted in the global settlement.

medication. It further stated that Eli Lilly and Bristol-Myers had made a joint settlement offer to resolve all of the cases and to set aside money for future cases against them. The disclosure referred to the global settlement agreement and by signing the disclosure, Carrel represented that she had reviewed and understood the terms of the settlement agreement and that she understood that she had the right to opt out of the settlement agreement and to pursue her claims separately. She also represented that she understood that a Special Master would determine her right to receive funds under the settlement agreement.

The settlement agreement provided that a settlement fund of no less and no more than a specified amount would be established through binding arbitration. Carrel acknowledged that Eli Lilly and Bristol-Myers had each offered Georgia Hayes (plaintiff in a similar case) settlements of approximately $1.45 million and that Hayes would not be participating in the distribution of funds by the Special Master.[3]

Also on November 4, 2002, Carrel signed a Release And Settlement Agreement which stated that she understood the process by which the Special Master would determine the settlement amounts and acknowledged that she agreed to accept the settlement amount determined by the Special Master as a full and complete compromise of her claims. [4]

---

[3] When the parties reached the global settlement, trial had started in the Hayes case.

[4] The Release And Settlement Agreement provided in part as follows:

Settlement Amount. In consideration of the Release and Discharge set forth above, claimants hereby accept entitlement to a settlement amount to be determined by a Special Master appointed by the Court. Claimants acknowledge that they have consulted with their attorneys prior to executing this Agreement, and further acknowledge: (1) that they understand the process by which settlement amounts will be determined by the Special Master; and (2) that they have agreed to accept the

(continued...)

On May 20, 2003, the Special Masters[5] awarded Carrel $134,906.29. On June 24, 2003, Carrel met with Shawn Foster to pick up the check for her portion of the award from the Global Settlement. Doc. #228-1 at 19. She told Foster that she thought that the award was not fair. Id. at 20-21. She told him that her case should have been treated like the Hayes case, that Hayes had "all of the attorneys and all of the attention." Doc. #242-1 at 6. Carrel told Foster that the proceeds from the Global Settlement should have been evenly distributed among the participants and that she should have received more money. See id. at 7-9. She did not seek the opinion of any other attorney at that time, because she thought that taking the settlement money was her only legal option and that there was no way to change it.

On May 13, 2011, Carrel testified that Davis' associate, Foster, who presented her the disclosure statement, did not provide her the global settlement agreement and that she did not see it before she signed the disclosure. See Doc. #287-1 at 15. She testified that she thought that she had no other choice than to accept the settlement because Foster told her that if she did not accept it she would get nothing. See id. at 12-13. She testified that she did not really understand that she had a right to opt out of the global settlement.

---

[4](...continued)
settlement amount as determined by the Special Master as a full and complete compromise of all claims against Lilly and/or [Bristol Meyers]. The amount determined by the Special Master shall be set forth in the attached Certification of Special Master.

Doc. #271-5.

[5] Although the Release And Settlement Agreement referred to "A Special Master," ultimately two Special Masters determined the settlement awards.

      B.      The Tilzer Case

In June of 2010, Carrel learned of the Tilzer decision.[6]

      C.      The Complaint And Pretrial Order In This Case

On September 29, 2010, plaintiff filed the complaint in this case. The Pretrial Order (Doc. #245-1) filed August 19, 2015 supercedes the complaint.

Plaintiff alleges that she hired Davis to represent her in a lawsuit against Bristol-Myers for negligence in failing to protect her from the danger of dilution of cancer treatment drugs. Plaintiff alleges that Davis represented clients in 243 of 348 cases involving similar claims against Bristol-Myers and Eli Lilly. She alleges that Davis made aggregate settlement demands without advising his clients (including plaintiff) that (a) the first-filed Hayes case was selected to go to trial first; (b) the Special Masters determined settlement amounts according to tiers, based on the timing of claims; and (c) as the sole member in the first tier, Hayes received much more in settlement than other plaintiffs. Plaintiff also alleges that Davis acted to conceal or failed to disclose (a) the specific amounts awarded to all families and the criteria and methodology used to determine the awards; (b) serious conflicts of interest between Davis and each of his clients; and (c) the fact that Davis had a strong interest in persuading each of his clients to participate in the global settlement agreement so that he could obtain his aggregate fee. Plaintiff seeks loss of settlement value and disgorgement of attorney fees.

**II.    Analysis**

Davis contends that at the latest, the two-year statute of limitations began running on

---

[6] The Court incorporates by reference the discussion of Tilzer v. Davis, Bethune & Jones, LLC, 288 Kan. 477, 486 (2009) in the Court's Memorandum And Order (Doc. #337) in Booth v. Davis, No. 10-4010-KHV, filed April 25, 2016, at 5-9.

June 24, 2003, when plaintiff received the settlement funds. At that point, she knew that Hayes had received vastly more in her settlement with Eli Lilly and Bristol Myers. Plaintiff argues that the action did not accrue or was tolled until December of 2009, when she learned about the decision of the Kansas Supreme Court in Tilzer. Plaintiff thus asserts that her complaint, filed on September 29, 2010 was timely.

A layperson is not expected to have legal expertise or to hire a lawyer for a second opinion. See Dearborn, 248 Kan. at 266. Here, however, by June 24, 2003, plaintiff knew that she had received a settlement which was a great deal less than Hayes (thus putting her on notice of the alleged injury). On June 24, 2003, she also knew that her attorney had handled her settlement and most of the settlements in the Courtney cases. Thus she knew or reasonably should have known that the alleged injury was due to attorney conduct. At that point she had knowledge of the material facts essential to her cause of action: an attorney-client relationship, negligence or breach of duty by Davis, proximate cause and injury. She could have filed suit at that time, just as the Tilzers did. The Court therefore finds that at the latest, plaintiff's cause of action accrued by June 24, 2003. The two-year statute of limitations, K.S.A. § 60-513(b), thus bars plaintiffs' legal malpractice claims. The Kansas Supreme Court decision in Tilzer had no material effect on when plaintiffs' cause of action accrued: it vested no rights in plaintiffs which did not already exist. And while it may have provided encouragement to sue, Kansas law does not toll a statute of limitations, or prevent it from running in the first place, pending the development of legal authority which is favorable to plaintiff's claims.

**IT IS THEREFORE ORDERED** that <u>Defendant Grant Davis' Renewed Motion For Summary Judgment</u> (Doc. #270) filed April 11, 2016 be and hereby is **SUSTAINED**.

Dated this 29th day of April, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge